Good morning may it please the court I'm VJ Shanker with the Department of Justice your honors it is well settled in this country that a criminal defendant must bear his own defense costs even if he prevails after trial the Hyde amendment provides a very narrow exception to this rule in cases where the government's position and the government's prosecution as a whole was frivolous vexatious or in bad faith the legislative history of the amendment and the cases that interpret it have demonstrated that it was designed to deter and compensate for meritless prosecutions that were brought to harass or bankrupted defendant under these standards clearly no award at all was appropriate in this case first the district court's own statements effectively precluded an award of fees for the case as a whole on the basis of account that the government's case was supported by probable cause was justified was sufficiently meritorious to send to the jury was not brought maliciously was not brought in bad faith back to the counts that he for which he awarded attorney's fees right I was referring at this point to the case as a right so he had all the information about the case when he was looking at this issue right and he found there was probable cause for some counts but that the government was horribly deficient as to others as accounts well actually he found that there was probable cause for all the counts what he found was that he granted a judgment of acquittal on certain counts finding that that as a the statute did not cover the counts or the government's claims in the in the indictment but accounts were not frivolous and certain of accounts were frivolous well he didn't find that certain of the counts were frivolous he found that one of the government's theories pertaining to a certain substance of evidence that the government's behavior with regard to that limited evidence relating only to some counts was frivolous he found that one of the government's what he called pillars which related to only some counts was frivolous because the government did not question its expert on the government's on the experts conclusions about that evidence but the court never found that all those counts were frivolous quite to the contrary it said in numerous times that those counts themselves even the ones that pertain to the bone fragment theory as a whole were supported by multiple pillars were supported by other experts so the court was only talking about a certain certain conduct by the government now we would submit that even that conduct wasn't frivolous that conduct pertains to the government's reliance on its expert you you said in your earlier remarks that the Hyde amendment was passed so that if the case as a whole was frivolous and you're making a warrant what's your reliance where do you get the congressional intent as a whole in other words that's that's really a big part of the issue today right it is I would say that it's not our it's not our entire argument we we would have a significant argument that the government's reliance on its expert was not frivolous but even putting that aside even assuming it was the argument that even assuming the government's conduct was frivolous with relate with regards to this one theory would not support a Hyde amendment go down and speak louder please yes I'm sorry thank you the congressional intent is demonstrated in the legislative history where Representative Hyde specifically said that what we're talking about here are cases that were brought with no basis in law or fact cases that were brought to harass cases that were bought brought to bankrupt defendants and if you read the legislative history which is nicely summarized in the Gilbert 11th circuit case the Hyde amendment was a response actually to a very specific prosecution of another congressperson and the evidence later showed that the government brought the case really for possibly political purposes or to bankrupt the defendant or to harass the defendant the the issue was the prosecution's foundation as a whole the Hyde amendment nothing in the legislative history in the Hyde amendment talks start with the plain language of the statute absolutely your honor congressional intent right and the the statutes plain language says that the expenses are appropriate where the court finds that the position of the United States was vexatious frivolous or in bad faith why don't you emphasize the word position well that's that that is you just ran over it isn't that the critical plain language oh that I was I was trying to emphasize the word position that see so we look at position do we look at position with respect to its theory of the case do we look at position with respect to I mean to certain counts do we look at I mean does it it doesn't say anything about whether you can look at the position as a whole didn't say as a whole and then it didn't say as to any aspect of its position certainly the statute doesn't define the position so we look at doesn't support your position doesn't it refer though to the equal access yes that's where I mean court there did define position as the case as a whole exactly that's where I was going next the statute doesn't define yes but that was a piece on these case and that relied on that was talking about its position as a temporal matter whether its position its position in the underlying litigation versus its position for fees on fees isn't that right well it was a fees on fees case but that the court didn't seem to limit its language to this I guess you can call it a vertical issue of or temporal verticalness issue in terms of the position the court said the IJA like other fee shifting statutes was designed to compensate for prosecutions that were brought prosecutions as a whole that were not did not have a foundation and what the gene court was doing I don't see its direct applicability to a criminal prosecution where you bring the mighty power of the United States government down upon someone who could potentially be innocent as Mr. Kramer was found and the government doesn't do take the steps that should do to ensure that this innocent person is not being forced to bankrupt his house or forgo whatever else because it's decided to pursue theories that are frivolous okay well obviously getting to whether the government's theories were frivolous that's a second issue but you keep trying not to answer the real question I'm saying we're talking about gene versus gene you can limit it or not limit it and you can say oh we're going to apply all the civil cases to the criminal cases and I'm suggesting maybe you can't apply the principles behind civil litigation in the same manner to criminal litigation when you do have the power of the United States government and you do have a USA's with a special and at least in our circuit where we've said over and over you have a special responsibility to ensure the integrity of the government prosecution right I don't know how we can just incorporate wholesale the civil rules here well the American playing yes they're on the same playing field the American rule of fee shifting has been applied in the criminal context historically without fail no case has held that the American rule applies with any less force because the government was using its powers in an overbearing manner right absolutely but my point is that the case is interpreting Aja nothing says that they should apply with any less force in the criminal context the fact that the Hyde amendment was passed doesn't mean that there's any less deference given to the government in the criminal context than there is in the civil context. Let me throw out another proposition to you. I understand why you're arguing what you're arguing in this case. I do. Right. And I understand that Mr. Kaganer's attorneys are arguing well you know not only should we have gotten fees for those counts we should have gotten fees for the whole thing because the whole thing was frivolous it was born out of this bad well this I guess this mean spirit competition amongst doctors and somehow the government ended up on one side of that. But from the government's point of view if you're going to have findings as a policy matter if you're going to have findings of frivolousness and the judge wants to maybe measure and apportion the attorney's fees only to those parties of the case that were actually frivolous in his view wouldn't that be better than requiring the government to pay the whole amount of the litigation. I mean isn't it almost better that you would apportion the fees to the frivolous aspect of the government's conduct. I don't think so Your Honor because I think the requirement that the court look at the case or whole and that it's an all or none case is that it's a gene case. Well you just asked me to assume. Okay I'm saying take away the gene case because my personal view is it does not apply to these facts. So take away the gene case. Right but you just asked me why the government's position is that apportion of fees is more appropriate than fees as a whole. Did I unless I misunderstood your question. No Your Honor because the requirement that the court look at the case as a whole gives the government. But we're arguing in circles. I said remove that requirement. Look at it from a policy concern. Right I am. I'm saying. I don't agree that gene applies. So let's move that. I understand that. But you're still comparing it to a policy concern. You're comparing the situation where the court can award partial fees versus the situation where the court is required to award either all or none. Right. Okay what I'm saying is the government's position that the court must award all or none protects the government more because if the court is required to award all then the government's not being the case isn't being parsed out for specific items of mis you know instances of misconduct or specific theories of that could be frivolous. The government the court has to look at the government's position as a whole and that will result in less fee sanctions against the government. That's why as a policy matter the government thinks that this is an all or none proposition. And in this case if it's an all or none proposition clearly no fees are appropriate. If the court has to look at the case as a whole. It's not frivolous, vexatious or in bad faith. I realize the court said that but I have a serious concern about this medical difference of opinion in terms of the scope of sinus surgery which is appropriate being the basis for a criminal prosecution. Okay. Even if that is the case with respect to the counts that were dismissed, the acquitted counts, then with respect there were still a couple dozen counts on unperformed surgery that were brought. Are those ones about the coding error? Those were the ones saying that he did not perform surgery which he billed for. Was that because they coded it incorrectly? Eventually the argument in court came down to whether the coding covered this surgery or did not cover this surgery and that's possibly why the defendant was acquitted. But that certainly doesn't mean that the government's position before that point was frivolous. There was certainly reason to believe that Dr. Kaepner did not perform the surgeries that he claimed to have performed. Numerous experts said so. One of the experts was the chair of otolaryngology at the University of Southern California and the government relied on that. And the jury ultimately acquitted the defendant. There's no doubt about that. But that doesn't mean the government's position was frivolous or vexatious or in bad faith. There's no evidence that the government knew beforehand that the district court would give an instruction that this coding covers this kind of surgery. The government's theory was that the coding doesn't cover this surgery. That was the government's theory. There's no basis to find that that theory was frivolous. Numerous experts told the government. Was the government aware that there's a disagreement among ENTs in this area? Well, this was not, Your Honor, this was not a medical malpractice case. I know the judge told you that several times. Right. So the fact that there was a disagreement. But you were prosecuting someone based, I mean, yes, you had experts in support of your position. But other experts would take a different position. Absolutely. But that itself. The difference of medical and scientific opinion as to the appropriate scope of treatment of science. But this this was a fraud case. This was a fraud case. And whether certain experts found said that this wasn't fraud. I think the fact that there was a disagreement between the experts demonstrates that this was not a frivolous position. They couldn't testify to that because that would be testimony as to the ultimate element of the crime, which the experts can't testify. They were testifying as to the disagreement about the appropriate medical treatment for sinus issues. Well, no. Your question was whether this code. Was there a defense based on that it was appropriate treatment? I thought the fight was whether, in effect, the code covered what the defendant did. Isn't that right? Yes. There's two there's two types of counts here to two separate allegations. One was unnecessary surgeries and one was surgeries that we have an expert to say this was necessary. He did. He did. I didn't think so. And he had a certain he had experts that said that some of these counts were not some of these surgeries were in fact performed. If you define the coding differently. But the fact that there's a disagreement between the experts only serves to underscore that this was not frivolous. That's a terrible argument. But I don't understand why you're making that argument. I sort of agree with her that it's a terrible argument, but that's not what the case was about. I mean, OK, thank you. Don't go there. Strikes me that's reasonable. May it please the court. Your Honor, I'm Jeffrey Parker for Dr. Caper. How would you like to proceed? What I don't understand is how did the scientific expert testimony related to the bone in the pathologist sample relate to the counts that were dismissed by the judge as frivolous, but he would not let him take them to the jury. Well, first of all, we need to clarify the fact that the judge's finding of a frivolous presentation  of the bone in the pathologist sample was not a frivolous presentation. It was a frivolous presentation because the judge, I think quite properly, was exercising his discretion under the Hyde Amendment to do just what Your Honor is suggesting, to proportion out the award of fees in relation to the misconduct. And so what the judge was doing was saying it's not about counts and it's not about anything else. It's about, again, in the sense of the overview of the case. That's why we point out that this whole issue that they try to raise about the case as a whole versus part of the case is once you grant flexibility for the judge to proportion the award to the misconduct, it really is academic. It's also a point they didn't raise in the district court, as we point out. You're saying the frivolousness went to the counts, which went to the jury? Your Honor is correct. The original decision by the jury. They were all acquittals. They were all acquitted, yes, by the jury. But here's what happened, Your Honor. It was an unusual situation. The judge first decided to throw out the entire case, not let any part of the case go to the jury. Then he thought about it over the weekend, and he changed his mind on the following trial day. And so then he divided his decision in two. The counts that he threw out were what had been called the medical necessity counts. And this was based, if you recall, the discussion you've had with counsel about this difference of medical opinion. The court found that definitive. But the court also found another thing definitive, which I think Your Honors ought to bear in mind. This was the group of counts that was affected by the other what we would call evidence suppression issue in the case, which had to do with the previous, the medical, the records of previous medical treatment of these patients. Remember. But that's what his opinion referred to when he for it. That's. He didn't refer to the other counts. He referred to the. I'm referring to his decision under Rule 29 now, which is on, is stated orally, starting at page 1198 of the supplemental excerpt. So, but that's not what his opinion awarding high and damaging. Your Honor is correct. But the judge's opinion on the damages was not based on the idea that counts were frivolous. Some, all, or he wasn't following that analysis because that argument hadn't been raised. Maybe I'm reading something different than you did, but I read the opinion clearly to be based on the fact that he found that the business with the bones, you know, they should have investigated. Yes. They shouldn't have accepted what their experts said. Your Honor is quite correct on that. Well, how do you get from that to, well, that's really not why he gave the money, but the rest of the case. I mean. No, no, no. That is why he gave the money. But my point is, the question was, were those counts dismissed as frivolous? And the answer is they were not dismissed because they reached the jury. Now, the jury dismissed them, and we argue in our brief. Lone Lone didn't reach the jury. Were those the ones he threw out? Your Honor is not correct. Those are the ones who reached the jury. And that's why the government's complaint about the district court's opinion is just totally off base. This issue was not raised in the district court. The district court was exercising his discretion. I think, after all, he was sitting there throughout the entire case. He was exercising his discretion to do what Judge Wardlaw suggested, I think, properly, which is to proportion the award to what he perceived to be the frivolous aspect of the case. An aspect, not a count, not a claim, not a theory, but just an aspect of the case. That was the judge's decision. So the code counts were thrown out before they ever went to the jury. Well, now, let me make another clarification. On the counts that did get to the jury, the counsel is correct. The ones that actually were sent to the jury, in a way, there was a partial directed verdict because the court instructed the jury that it accepted the defense's position on what that code covered. Your Honor is quite correct. But they did go to the jury, but it was, in effect, a directed verdict, if you will. Okay. Now, even in your view of the case, it's still true that the court is saying that one position of the government was frivolous, improper, and so on. Your Honor is correct. One of several positions that it may have taken during the litigation, but the one dealing with the bone fragments was. Right. Well, in some ways, doing something else, I think, is important. I apologize for interrupting you, Your Honor. He proportioned the damages in relation to the cost created by the misconduct by the government. Right. I think that's an important point. Okay. But then, but still essential to your argument is the idea that the judge can evaluate an award depending on part of the case. He doesn't have to take a look at the whole case and make an all or nothing judgment. Your Honor is correct, yes. Okay. Now. Although I'm not sure that's what he, although I'm not sure that's what happened here, but that's our position. Yeah. Well, all right. Now, suppose there are ten counts brought by the government. Right. And a jury convicts on eight of them, and the judge decides the other two should never have been brought. They were utterly frivolous. Can the judge award attorney's fees to the convicted defendant for the fact that the government brought those two frivolous claims? That's a good question, Your Honor, because it takes us back to what the statute actually says, which has been lost in some of this discussion. That case is governed by the statutory formulation of is that defendant a prevailing party? Okay. Not the position language, but the prevailing party language. So if the prevailing party applies to the case, that's, I think, clear from the statute. And that's in the beginning part of the statute. Yes, right. So that's where that issue comes into play. That's why we say, like Gene said, that there's a difference between the temporal dimension and the breadth dimension. The breadth dimension is taking into account and deciding prevailing party. Then after you've decided that you have a prevailing party, then the issue is, is it all or nothing? The government then argued, because, again, there's no such issue in this case. Because Dr. Capon was the prevailing party. He won on every count. There were 52 counts. He won on every one of them. Let me ask you a number of questions. First of all, what do you think was the misconduct in this case? Both types of misconduct. In terms of, let's break it. You could just be a little quieter. Oh, I'm sorry. Slow down. I thought you were having difficulty hearing me. It's very complicated factually. All right. So let me step back from the, is that better? Yeah, a little better. Thank you. There are two aspects to the case. On the evidentiary side, the misconduct was exactly the same kind of misconduct that was involved in the Brownstein precedent of this Court, which is that the government knew that there was evidence out there likely to be exculpatory and, we say, deliberately avoided. What's the basis for that statement in this record? The basis for that, we've got two different instances. One is the pathology slides, which is the issue that the Court relied upon. But there's a second one that the Court bypassed, we think, incorrectly, which was the medical records of prior medical treatment. And I will give you a citation. If you look at page 104, which is in the indictment, this is of the government's excerpts of records, they affirmatively allege that the surgeries were not necessary because there had been no prior medical treatment tried or rather that because these patients could have been treated medically. The fact was they had been treated medically before they were ever referred to Dr. Kapanen. So the evidence of intent is that they made an affirmative allegation that's just flat false. And this is not rocket science. The judge overlooked this point on the Hyde Amendment motion. It's clearly preserved on the record. Page 345 is where we make the argument. The judge somehow got confused in his mind and he thought that this issue related only to vexatiousness so that he didn't apply Brownstein. That's the error we suggest. As you know, we're not serious critics of what Judge Jones did here. But the point is he did over – he just over – it can happen to anybody. He just overlooked a point that is exactly parallel, though, to his analysis on the pathology slides. The pathology slides, in a way, is less linked to the indictment. I mean, I have trouble seeing that. There's a big difference between this and Brownstein. Now, maybe they were negligent in not following up and asking for it. But, you know, prosecutors often don't go to every – you know, dot every R in quotes every T. Well, Judge Trager – I mean, that's a lot different than on the Brownstein where they were on notice that people were saying that there was no case here. Well – People were telling them. This is really a failure, maybe negligence, but how does that compare now to misconduct? Well, I think they were on notice because they had talked to the pathologist, Mardini. Now, the reason there isn't – the record's incomplete on this is the government hasn't produced either a statement by the – by the AUSA who talked to Mardini or any notes on her conversation with Mardini. But there's also evidence the government told the prior – I think the prior lawyer about the – you know, about the – this issue. There's a statement to that effect by Ms. Clifton. There is no evidence. And the government had a chance to put in evidence. Did they put that statement in a declaration? I beg your pardon? Did the AUSA put that statement in the declaration? No, Your Honor. It was put on the record on the day after the episode arose in the midst of trial. Remember, this pathology thing came up on the first day of evidence at trial. Then the defense then had to scramble, right, because it had to get the subpoenas. It had to actually get the pathology slide. This is what led to – essentially to the half million dollars in cost. They had to run out, get all these slides, get the examining pathologist, get an expert pathologist, and all in the middle of trial. This was the unreasonable nature of it, and all because Ms. Clifton had left out of the expert witness statement that this was the basis of Dr. Rice's testimony. And on the first day, she said, well, yeah, I left it out, but I thought I did enough. That's what she said on the first day. She admitted leaving it out. On the second day, she came back and said, well – and she had a new story, which, frankly, I think is either extraneous or condemnatory of the government's position, which was, well, now I have thought about it overnight, and now I remember that I told a prior lawyer for the defendant before the indictment was ever brought that this – I didn't run out and get the prior lawyer to contradict her. I mean, we know – Because she didn't – she didn't put – We assume that USA's don't sit and lie to judges deliberately. Well, Your Honor, because this was not put in evidence. The USA's – the United States had a chance to put this in evidence. They could have sworn her. They didn't. They could have put in an affidavit for her. They didn't. I think representation – I take representations by assistance as the equivalent of saying I'm being under oath when they make representations. Well, then which representation will Your Honor accept? The first day's representation, that I did the best I could? Well, the second day's representation that I left it out because I had previously talked – told it. I have another question about your theory, which is a variation. It has two facts. You know, no basis in law, no basis in fact. Suppose the government, in a union kickback kind of case, charges mail fraud and improper payment under the Labor Act, okay? And the judge or the court of appeals throws out the mail fraud count as a matter of law. But the union kickback goes to the jury and they acquit, okay? And there was sufficient evidence. The judge denies the motion. Okay. Is that under your theory of how prosecutors have to operate if they make an argument that's thrown out as a matter of law, that now there is a partial judgment? Under the Hyde Amendment? You mean? Yes. No, I don't think that necessarily follows. Why? Well, because I think it depends on whether there was a – it's the distinction drawn in this Court's own case, whether there was a good faith argument on the law or not. Okay. Take it now in facts. The government alleges different theories of conduct. They bring witnesses on various cooperator, okay? And it turns out the cooperator is impeached in a way that it's pretty clear that the judge tosses it. But it was more they were unaware of this impeachment evidence or, you know, the guy sold them a bill of goods. Does that give them a Hyde Amendment? There I think it depends on what the government actually did. In other words, if they were aware or should have been aware or a fair-minded prosecutor, given that that is the federal prosecutor's duty, would have been aware, then yes, I think that's the basis for an award. My time is up, or I've got 15 seconds left. So if the Court has no further questions. Actually, I seem to be getting more – I'm over. I'm sorry. I'm going backwards. I apologize to the Court. Thank you. Thank you, counsel. Government counsel, do you – I'll give you a minute if you would like to. Thank you, Your Honor. Your Honors, my opposing counsel repeatedly used the word misconduct, but the district court made repeated findings here that there was no misconduct. There was no purposeful omission from the Rule 16 disclosures. There was no purposeful – made an allegation. ER 104, where the indictment alleges that there was no medical – there's no history of prior medical treatment as to certain of the patients when, in fact, the government had all the medical records in its possession. The government didn't have the medical records in its possession. The medical records were – had to be subpoenaed by the defendant. The government didn't subpoena the medical records because its experts said, I don't need to see the prior medical records. Looking at the CAT scans – Wait a second. So you indicted Dr. Kaepner with an allegation that says, in furtherance of a scheme to defraud him for the purposes of increasing his income, Defendant Mark Kaepner would expose some patients, including children and the elderly, to the risks of general anesthesia and surgery when the defendant knew that the patient could have been treated medically without surgery or could have been benefited from a less complex procedure. Why wasn't it the government's responsibility to prove that? It was. But the government didn't need prior medical records to prove that because its expert, the chair of ENT at the University of Southern California, looked at preoperative CAT scans and said, looking at these preoperative CAT scans, I can tell you that these surgeries were unnecessary. The prior medical history was irrelevant. That's the problem. I mean, I am well aware of the disagreement amongst ENTs as to the necessity and the scope of surgery, and that's not criminal. But the question is, did the government act frivolously, vexatiously, or in bad faith in relying on this expert, this chair of ENT at Southern California, without knowing that there was any reason to question this expert? There was no reason to go back to pathology slides when pathology reports were required to memorialize exactly what was in these pathology slides, and they didn't mention the presence of bone fragments in many cases. And, in fact, they mentioned them in some cases and not in other cases. Why would the government have reason to believe that where a pathologist mentioned the presence of bone fragments in some cases and not in others, that there was actually bone fragments in all of the cases? Is that frivolous behavior? That's the question. Not whether there was a mistake here. Not whether the defendant was acquitted. We know that. The question is, did the government act frivolously? All right. Thank you, counsel. Thank you. U.S. v. Kate Harris, submitted.
judges: Canby, Wardlaw, Trager